## BITTING *v.* THE STATE.

1. The demurrer which asserts that section 28 of article 20 of the banking act of 1919 (Acts 1919, pp. 135, 219) is unconstitutional because in violation of art. 3, sec. 7, par. 8, of the constitution, was properly overruled. The office of the caption of an act of the General Assembly is to call to the attention of the legislators in both the House and the Senate the scope and contents of the proposed legislation, and to inform them of the purposes sought to be accomplished. One paragraph of the caption, which declares that one of the purposes of the act is "to provide penalties for the violations of laws with reference to banking and the banking business," sufficiently complies with the constitutional requirement that no act shall contain matter different from what is expressed in the title.

2. While disqualification of a grand juror propter defectum may be good ground for quashing a criminal accusation preferred by the grand jury of which he was a member, mere disqualification of a grand juror propter affectum is not a good ground for a plea in abatement, and will not require the dismissal of the charge.

3. The exceptions contained in the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twenty-third grounds of the amendment to the motion for a new trial are not sustained. When pertinent and essential facts can be ascertained only by an examination of a large number of entries in books of account, an auditor or an

---

Banks and Banking, 7 C. J. p. 579, n. 22; p. 580, n. 25 New.

Criminal Law, 16 C. J. p. 407, n. 35; p. 615, n. 66; p. 616, n. 86 New; p. 627, n. 82; p. 742, n. 41; p. 755, n. 95; p. 756, n. 28; p. 757, n. 41; p. 764, n. 54; p. 942, n. 63; p. 1011, n. 25; p. 1049, n. 82; p. 1050, n. 84; p. 1063, n. 85; p. 1162, n. 41; p. 1163, n. 52 New.

Juries, 35 C. J. p. 371, n. 78.

Statutes, 36 Cyc. p. 967, n. 83 New; p. 1035, n. 52; p. 1098, n. 48, 49, 50.

expert accountant who has made an examination and analysis of the books and figures may testify as a witness and give summarized statements of what the books show as a result of his investigation, provided the books themselves are accessible to the court and the parties.

4. The court did not err in the admission of the testimony of which complaint is made in the thirteenth and fourteenth grounds of the motion for a new trial. A witness may give his opinion as to market value of notes or other property, and as to the solvency of a bank, after having stated the fact or facts upon which he bases his opinion. The weight to be given such opinion is a matter for the jury, who have power to disregard the reasons given.

5. The testimony to which objections were made as set forth in the seventeenth, eighteenth, nineteenth, and twentieth grounds of the motion was competent and admissible for the purpose of showing fraudulent mismanagement of the bank while the accused was in charge of its affairs.

6. The court did not err in rulings on admissibility of evidence as complained in grounds 21 and 22 of the motion.

7. In grounds 24 and 24a of the motion it is recited that objections were made on the ground that certified copies, and not the originals of the reports of the condition of the Bank of Commerce, should be offered in evidence. One of these papers was filled out by the defendant, and the other was signed by him. Even if these writings are office papers, they were nevertheless properly admitted as evidence in this case, as admissions of the defendant on trial. Even if office papers, being originals, they were admissible. *Myers* v. *Wright*, 158 *Ga.* 418 (3) (123 S. E. 740); *Rogers* v. *Tillman*, 72 *Ga.* 479.

8. The instructions of which complaint is made in grounds 25 and 32 of the motion are not erroneous for the reasons assigned, when the language of which complaint is made is construed in connection with other instructions upon the same subject; and they could not have misled the jury, when considered in connection with the charge as a whole.

9. The refusal of a written request for instructions is not error when the subject is fully covered in the charge of the court as delivered.

10. The instruction of which complaint is made in ground 27 of the motion for a new trial is not subject to criticism as an expression of opinion on the part of the court.

11. The court did not err in instructing the jury as to the acts denounced in the Code as illegal. The court informed the jury, in the language of the Code, that certain acts to which some of the testimony adduced related were unlawful. The charge of the State and the defense of the accused necessarily put in issue the legality of various transactions detailed in the testimony. It was therefore proper that the jury should have been instructed whether any one or all of the acts which the evidence indicated had been committed were or were not in violation of law.

12. The evidence of the guilt of the defendant being largely if not entirely dependent on circumstantial evidence; it was not error to charge the jury: "To warrant a conviction upon circumstantial evidence alone, the proven facts must not only be consistent with the hypothesis of

guilt but they must exclude every other reasonable hypothesis save that of the guilt of the accused. Whether dependent on positive or circumstantial evidence, the true question in criminal cases is not whether it be possible that the conclusion at which the testimony points may be false, but whether there is sufficient testimony to satisfy the minds and consciences of the jury beyond a reasonable doubt."

13. When considered in connection with the charge of the court as a whole, the excerpt from the charge of which complaint is made in ground 30 of the motion for a new trial is not erroneous for any reason assigned.

14. While the proprieties would suggest that persons related to the prosecutor in a criminal case should not be brought in contact with the jury charged with the trial of such case, under any circumstances or at any time during the trial, still the fact of such contact will not require a new trial when it affirmatively appears that there was no communication with regard to the case or any hint or suggestion as to the result thereof, and that therefore no injury could have resulted to the accused.

15. One who accepts a juror with knowledge that such juror is disqualified waives the disqualification.

16. The evidence supported the verdict returned by the jury.

No. 5781. SEPTEMBER 29, 1927.

Violating banking law. Before Judge Roop. Chattooga superior court. November 29, 1926.

*J. M. Bellah, Wesley Shropshire,* and *Maddox, Matthews & Owens,* for plaintiff in error.

*J. F. Kelly, solicitor-general,* and *Graham Wright,* contra.

RUSSELL, C. J. N. K. Bitting was convicted as responsible for the fraudulent insolvency of a bank. Exceptions are taken to the overruling of his demurrer to the presentment, the dismissal of his plea in abatement, and the order overruling his motion for a new trial. The charge in the presentment is that the "said N. K. Bitting, on the 31st day of December in the year of our Lord nineteen hundred and twenty-four, in the county aforesaid, being then and there cashier and director of the Bank of Commerce of Summerville, Georgia, in the County of Chattooga, said Bank of Commerce being a corporation incorporated and chartered under the laws of Georgia and doing and carrying on a banking business, and as such officer and cashier and director of said corporation being by law charged with the fair and legal administration of its affairs, the said Bank of Commerce then and there, pending and during the official charge and responsibility of the said N. K. Bitting, did then and there be and become fraudulently insolvent, contrary to the laws of said State," etc. The demurrer raised the point, not only that the presentment was insufficient as matter of

law to charge any offense, but also that section 28 of the banking act of 1919 is unconstitutional and void. The plea in abatement is based upon the proposition that certain grand jurors were incompetent by reason of their interest because of relationship to sundry stockholders and depositors of the bank. The motion for new trial is based upon 39 assignments of error challenging the correctness of the lower court's rulings upon the admissibility of evidence, and various instructions contained in the charge of the court, as well as requests for instruction which the court refused to give, all of which will be dealt with more specifically hereafter.

1. It is alleged in the demurrer that section 28 of article 20 of the act of the General Assembly of Georgia, approved August 16, 1919, entitled "An act to regulate banking in the State of Georgia; to create the department of banking of the State of Georgia; to provide for the incorporation of banks, and the amendment, renewal, and surrender of charters; to provide penalties for the violations of laws with reference to banking and the banking business; and for other purposes," "upon which the special presentment against this defendant in this case is based, is unconstitutional, null and void, for the reason that it violates the provisions of the constitution of the State of Georgia contained in article 3, section 7, paragraph 8, thereof, in that it contains matter different from what is expressed in the title of said act; and especially that the title of said act makes no reference whatever to the enactment of any statute creating or constituting criminal offenses, or with reference to setting up any rules of evidence to be applied upon the trial of any case involving a violation of any criminal offense purported to be set up therein." Apparently the language of the caption itself refutes the contention of the plaintiff in error, for it would seem that by any reasonable rule of construction that portion of the caption which states that the proposed act is "to provide penalties for the violations of laws with reference to banking and the banking business" is ample to have put the General Assembly upon notice of any provision similar to that contained in section 28 of article 20. However, in view of the strenuous argument of counsel for plaintiff in error, we have carefully considered the point as if the language quoted were not embodied in the caption, and have found no difficulty in reaching the conclusion that the lower court correctly overruled

the demurrer. "An act to regulate banking in the State of Georgia," and "to create the department of banking of the State of Georgia, . . and for other purposes," would, in our opinion, under numerous decisions of this court be sufficient to call the attention of the members of the General Assembly to any provision germane to the regulation of the banking business in this State, which would include, of course, such penalties or some penalty of some nature without which the legislation would be entirely ineffective and nugatory. *Welborne* v. *State,* 114 *Ga.* 793 (40 S. E. 857) ; *Harrell* v. *Cane Growers Co-Op. Asso.,* 160 *Ga.* 30 (126 S. E. 531), and cit.; *Felton* v. *Bennett,* 163 *Ga.* 849, 853 (137 S. E. 264). Moreover, it is well settled that if the effort to substitute a new provision of law for a pre-existing statute is for any reason ineffective or abortive, the pre-existing law still remains of force; for it must be plain that an unconstitutional act does not repeal any prior legislation. 36 Cyc. 1098 (4, 49, 50). A comparison of section 28, which is now the subject of attack, with the provisions of section 204 of the Penal Code, which has found a place in every code of this State and has frequently been construed, shows that the provisions of the two are practically identical. For that reason the judge of the lower court may or may not have placed his judgment in overruling the demurrer upon an adjudication as to the constitutionality of section 28 of article 20 of the banking act of 1919. All of the arguments now presented as to the invalidity of section 28 of article 20 of the banking act were fully dealt with by the Court of Appeals in *Youmans* v. *State,* 7 *Ga. App.* 101 (66 S. E. 383), and later this court reached the same conclusion in *Griffin* v. *State,* 142 *Ga.* 636 (83 S. E. 540, L. R. A. 1915C, 716, Ann. Cas. 1916C, 80). While the point is raised that the presentment in this case is wholly insufficient to put the accused upon notice of the nature of the charge against him, so as to enable him to properly prepare his defense, this contention must at last rest upon the contention that it is beyond the power of the lawmakers to raise a presumption of guilt from the mere fact that the bank in question became insolvent while in charge of and under the control of the accused. This question has been settled by the decisions just cited.

2. The plea in abatement alleges that the presentment is in-

valid and should be quashed, because a number of the grand jurors who found this accusation against the defendant were interested in and for the prosecution, by reason of the fact that they were themselves stockholders and depositors in the Bank of Commerce or related to such. The State demurred and moved to strike this plea. The relationship was of course thus admitted to be true as matter of fact; and this raises the question whether the disqualification of a grand juror propter affectum presents any reason why a presentment or indictment should be quashed in a case where one or more members of the grand jury which found the accusation were disqualified for favor or propter affectum, as must be done in case a member of the grand inquest is incompetent propter defectum. It is stated in the briefs that this is perhaps the first time that this question has been submitted to this court for its consideration, though reference is made to the fact that the Court of Appeals has more than once ruled that disqualification of a grand juror propter affectum does not afford ground for the dismissal of the charge. We think that this court, in *Betts* v. *State,* 66 *Ga.* 508, in principle directly decided the question now before us, though the facts upon which the ruling was based were not identical with those presented by the case at bar. In that case the court ruled: "It is not a good plea in abatement to an indictment that one of the grand jurors who found it had previously been a member of the coroner's jury who sat upon the corpse, and who found that the deceased had come to his death at the hands of the present defendant, and that the killing was murder." Certainly a depositor in a bank or a mere relative of such could not be said to be more strongly impressed with the defect propter affectum than a member of a coroner's jury who upon his oath had declared that he was convinced that the defendant was the guilty party, and that the act committed by him was murder; and yet this court sustained the judgment of the lower court overruling the plea in abatement, after a very thorough consideration of the reason and effect of the ruling set forth as above, not failing to point out the continual observance by this court of the most extreme caution in guaranteeing a fair jury to every person accused of crime. Mr. Justice Speer, in delivering the opinion of the court, said: "The court overruled the plea in abatement filed by the defendant as to the com-

petency of Waldrup as a grand juror, who found the bill, because he had served as a juror on the inquest held touching the murder of the deceased; and this is made the sixth ground of the motion. So far as our examination has extended, we can find no ruling of this court determining the question here made. In other States the rulings on this point are somewhat variant. It is a well-recognized rule that a grand juror who had acted in finding a bill is not competent to sit as a traverse juror on the trial of such an indictment; and in 39 *Ga.* 118 [*Hawkins* v. *Andrews*], it was held that a grand juror who found a bill for trespass was incompetent to sit as a traverse juror on the trial of the same trespass on the civil side of the court. Further, it has been ruled that if a grand juror is not qualified under the law to serve as such, his presence would vitiate the action of the body. That is, that a challenge propter defectum would, if maintained, void the accusation; but we find no ruling by this court that a challenge propter affectum, or for favor, would so operate." This is a ruling that the court (in the absence of authority to the contrary) decided that disqualification merely propter affectum should not be permitted to require a reinvestigation of a mere charge against the accused before a grand jury. The charge contained in the indictment could not affect the accused even if he were innocent, even though it was made by persons prejudiced against him. In fact the charge would lose much of its weight were it known that it was made as a result of spite or prejudice.

In the case of *Garnett* v. *State,* 10 *Ga. App.* 112 (72 S. E. 951), in which the writer delivered the opinion of the court, it was held that alleged disqualification of a grand juror propter affectum is not a valid ground for plea in abatement to an indictment. However, it is argued by plaintiff in error that in every case whether the alleged disqualification rests upon favor or propter defectum there is a necessary distinction between a case in which the accused is presented by the grand jury of its own motion by presentment and a case where an indictment is returned after the issuance of a preliminary warrant which has been served upon the accused, who thereby has had notice of the pendency of the prosecution which is progressing against him. An examination of the record in the *Garnett* case, supra, shows that the plea in abatement in that case, just as in the case

at bar, contained the statement that no warrant was ever issued against or had been served upon the defendant, nor did he have any notice that the charge would be the subject of inquiry by the grand jury, and that therefore he had no opportunity to object to the service of the grand juror of whose prejudice and bias complaint was made in the plea of abatement. The court held that "The person from whom goods are alleged to have been burglarized sustains such a relation to the State's side of a criminal case that he would be incompetent as a petit juror. But the grand jury is merely a court of inquiry, and the disqualification of a grand juror for such a cause can not be taken advantage of by plea in abatement." The ruling in this case was followed in *Stapleton* v. *State,* 19 *Ga. App.* 36 (3) (90 S. E. 1029), and other cases. Aside from the reason given in the *Garnett* case, that the grand jury is merely a quasi court of inquiry to determine in every instance merely whether there is sufficient evidence to require a legal investigation as to the guilt of the particular person accused of crime, and really determines nothing more than this by the return of an indictment or presentment, upon the trial of which the court will instruct the jury that this is not evidence but merely the pleading in a charge, "In this State, the earliest adjudication of the Supreme Court is an unqualified ruling to the effect that causes which would tend to disqualify a grand juror propter affectum do not furnish sufficient ground for a plea in abatement to the indictment. *Betts* v. *State,* 66 *Ga.* 509, 515. The reasons given by the court in that case seem to be valid and convincing. It is true that there are several subsequent decisions of the Supreme Court in which there are to be found intimations that the defendant might raise the point by plea in abatement, if he could prove that he had no notice that his case was to be investigated by the grand jury and had no opportunity to present his objections or challenge before the indictment was returned; but in none of these cases is there any direct ruling on the proposition. Of course, challenges propter affectum would go against grand jurors empaneled as a special jury to try an issue before the court; for in that event they stand in the same relation as petit jurors. See *Justices* v. *Griffin &c. Plank Road Co.,* 15 *Ga.* 39. There is, however, a vast difference between the functions of grand juries and those of trial juries. In no true sense does

the grand jury try cases in which they prefer indictments. The object of the grand inquest is, and has been from earliest time, . to inform the court as to what persons are suspected of crime, to the end that they may be tried. Those who have committed, or who are accused of having committed offenses, have no right to a hearing before the grand jury, or to dictate as to how the inquest shall be made, or what range the inquiry shall take. In investigating crimes the grand jurors are performing a function for the benefit of the State, and, theoretically at least, not for the benefit of the accused. It would seem that the main reason why the court should remove partial grand jurors from the panel before the inquiry begins is the inexpediency of putting the public to the trouble and expense of trying an alleged defendant, unless those who are impartial are willing to accuse him on the testimony which the prosecution, or State's counsel, is able to produce against him; and further, there is incidentally the other reason that an injustice is done to the individual citizen when he is subjected to accusation of crime by those who would be more than normally willing to exalt bare unsupported suspicion into a reasonable ground for indictment and trial. For this reason it is proper that the court should in advance of the grand jury's action receive information from the defendant, from an amicus curiæ, or from any other legitimate source, tending to show that certain of the grand jurors would likely be biased, and that he should purge the panel so as to make it impartial. But when the grand jury has acted, when the formal charge has been made and published, when the trouble and expense of the preparation for trial has been incurred, when the defendant has been arraigned and asked, 'Are you guilty or not guilty?'—when the injury that would result from the unjust accusation, if it is unjust, has been consummated, and there can be no vindication of the defendant except upon looking to the merits of the transaction, there is but a small quantum of justice, and less of expediency, in allowing him to say, 'Delay the trial, because the State is prosecuting me on the information of prejudiced persons.' If the accusation against the defendant is unjust and untrue, that fact can be established much more surely, satisfactorily, and quickly under the plea of not guilty than it can be by quashing the indictment, and ordering a new preliminary and inconclusive inquiry before another grand

jury. Largely for these reasons, as well as for others, the courts of the country have been disinclined to allow defendants, by plea in abatement, to urge that one or more of the grand jurors who acted upon the indictment were disqualified. The tendency has been to cut off collateral inquiry, and to allow the main issue to proceed." *Hall* v. *State, 7 Ga. App.* 115 (66 S. E. 390).

The authorities in a majority of our sister jurisdictions are in harmony with the rule that a defect on the part of a grand juror propter affectum does not present good ground for a plea to abate the accusation. Apparently what is said in 16 C. J. 406, which would indicate that a different rule was recognized by some of the States and by the Supreme Court of the United States, is based upon a failure to take into account the distinction which is well recognized in this State between the disqualification propter affectum and propter defectum; for it appears that in the cited case of Crowley *v.* United States, 194 U. S. 461 (24 Sup. Ct. 731, 48 L. ed. 1075), that the juror whose disqualification was complained of was a citizen of a foreign nation, and therefore disqualified, not propter affectum, but propter defectum, and in such an instance he would have been disqualified under the Georgia rule, just as such grand juror was held to be disqualified in the case cited. That ruling, therefore, does not support the proposition that disqualification propter affectum would support a plea in abatement.

3. The first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twenty-third special grounds of the motion for a new trial involve practically the same question as applicable to various rulings of the court upon the admissibility of evidence. The exceptions all deal with the evidence of J. T. Perry as to the correctness of an audit made by him of the books of the Bank of Commerce, of Summerville, Georgia. In the first ground the defendant objected to the witness testifying that he had made an audit of the books of the Bank of Commerce for the State Banking Department, upon the ground that it was not shown that the State Banking Department had authorized the witness to make an audit. In the second ground the defendant objected upon the ground that the question called for the conclusion of the witness, and because the books of the bank would be the best evidence. The third ground presents the objection of the

defendant to the question and answer in which there was elicited from the witness the statement that his audit correctly showed the notes receivable of the bank, upon the grounds that the answer necessarily called for a conclusion of the witness, that there was no evidence that all of the notes listed were in court for examination, that the list did not show what notes were referred to, and that the bills-receivable book was the best evidence. In the fourth ground complaint is made that the witness was permitted to testify that what appeared in the audit was correctly taken from the records and books of the bank, over the objection that there was no evidence that any trial balance was ever made of the books or that the books showed any trial balance, and that the question does not identify what the audit was or what appeared in it. In the fifth ground it is pointed out that objection was made to the question, "I show you the statement on Schedule 4, the details of adjustments, and will ask you if those items were taken from the books and records of the bank?" and the answer, "Yes, sir," on the ground "that the language of the question shows that it was somebody else's work, it being the details of adjustment, and was not taken from the books of the bank." In the sixth ground objection was made to the question and answer, "I show you Schedule 5 of the audit, the assets and liabilities of the Bank of Commerce; does that correctly represent the assets and liabilities as shown by the books of the Bank of Commerce? Yes, sir," upon the ground that the books and records themselves were the best evidence, and that this statement was a conclusion of the witness, and it was not shown that he made up the lists himself. In the seventh ground objection was made to the question and answer: "Q. Schedule 6, an analysis of the undivided profits; does that correctly represent an analysis of the undivided profits as shown by the books and records of the Bank of Commerce? A. Yes, sir," upon the ground that "it does not purport to show what the book is, but is an analysis of certain books, and is hearsay." In the eighth ground exception is taken to the following question and answer: "Q. Schedule 7, an analysis of the expense account of the Bank of Commerce; does that correctly represent a statement of that account as shown on the books of the Bank of Commerce? A. Yes, sir," based upon the objection as set forth in the next preceding ground. The ninth ground contains a similar

objection based upon like grounds to the question and answer as to the correctness of "schedule 8, reconciliation of the note receivable," and the further objection that the record itself is the best evidence. In the tenth ground exception is taken because the court overruled objections to the following question and answer: "Q. If I understand it, while you made some of these statements, Mr. Comfort made some of them, you checked the totals of these? A. Yes, sir, I did that myself," based "on the ground that the witness had already testified that these detailed statements had been made by somebody else, and would be hearsay." It appears that the court did not overrule the objection until he had again asked the witness and the witness had testified that he had himself checked the totals. In the eleventh ground exception is taken to the overruling of objections to the following questions and answers: "Q. Have you before you the statement of the bank showing its financial condition at the time that it closed? A. Yes, sir. Q. Can you give me the amount of the bills payable of the Bank of Commerce as shown by the books? A. The bills receivable shows $148,985.75. Q. That was the bills payable to the bank? A. Yes, sir. Q. Receivable by the bank? A. Yes, sir. Q. Now what other assets of the bank are shown? A. Furniture and fixtures, $2,145.17; real estate, $2,965.62; deposit in Atlanta Trust Company, $296.15; deposit in First National Bank of Chattanooga, $132.02; deposit in Hamilton National Bank, Chattanooga, $2,151; deposit in National Bank of Commerce, New York, $9.99; cash on hand, $1,123.21; and stationery, $119.46. That is the assets as shown by the books. Q. Actual? A. Yes, sir. Q. On the date it closed? A. Yes, sir." The objection interposed was that the record about which the witness was testifying was the best evidence.

We have thus stated at length all of the exceptions in the first eleven grounds of the motion, because it is evident that all must be controlled by a ruling upon the scope and office of the testimony of an auditor, presumably an expert bookkeeper, in summarizing bits of evidence, sometimes interminable in number, taken from very voluminous records which are themselves admissible and are before the court, so as to aid the jury in ascertaining what are really the contents, the purport, and the precise effect of testimony which to men unskilled in the keeping of books of

account would otherwise be practicably undiscoverable and indeterminable. One of the objections strongly urged in the argument of counsel for plaintiff in error, especially as to the eleventh ground, is that the evidence is opinionative, especially as to the statement of the bank showing its financial condition at the time it closed, and the statement in which the witness undertook to give the value of the various assets of the bank. Most of the exceptions present the objection that the books themselves would be the best evidence as to the facts to which the witness purported to testify; and counsel argues: "This flaunting of an alleged audit of the bank's affairs, made for the superintendent of banks, continually before the jury and used as a basis of opinions as to the insolvency of the bank, and particularly the questions with reference to the schedule showing certain alleged adjustments on the books of the bank, was highly prejudicial to the defendant. The testimony of the witness that in making his audit he had made up a schedule of adjustments on the books tended strongly to cause the jury to infer that the books had not been properly and correctly kept." Evidence, however harmful to one charged with crime, can not be properly said to be prejudicial unless it was legally incompetent or inadmissible evidence. It does not seem to us that any of the evidence to which objection was made was improperly admitted for any reason suggested in the exceptions or argument of counsel. It has frequently been held that proof of value is merely matter of opinion, no matter how the information of the witness may have been derived, whether based upon his own estimate or upon an estimate accredited by the witness but derived from the opinions of others. And while this court has decided that "The opinions of persons can not be proved or used in evidence this way,—that is, a witness will not be permitted to prove the opinions of others on any question," if the testimony sought to be excluded is given as the opinion of the witness himself and vouched for by the witness as such on his oath, it is not to be excluded merely because upon cross-examination the sources of his information and the information which caused him to form the opinion testified to are discovered. The jury may discredit the opinion of the witness after they know the causes which lead to the formation of his opinion; but the opinion of the witness as to value, if it is his own opinion, is admissible as evidence for

whatever it may be worth, regardless of the reliability of the data upon which he was induced to base his opinion. In Code § 5875 it is declared: "Direct testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article, but may testify as to value, if he has had an opportunity for forming a correct opinion." The auditor in this case was obliged to swear to the correctness of his audit, or otherwise it would not have been admissible. *Crawford* v. *Roney,* 126 *Ga.* 763 (55 S. E. 499) ; *Payne* v. *Franklin County,* 155 *Ga.* 219 (2) (116 S. E. 627). As said in the *Crawford* case, by Mr. Justice Atkinson, what is discovered by an auditor may well be testified to by him in an understandable form for the aid of the jury, although the books are admissible in evidence and may be examined by the jury. The credibility of the expert witness as well as the weight of his testimony is a question solely for the jury; and the same rule applies as to all other expert testimony, to wit, that the jury is not bound to accept the opinion of the expert by the strictness of the rule which requires them ordinarily to accredit what is testified by the witness unless he is impeached or discredited. Upon the subject of the admission of testimony of the nature now before us see *Cabaniss* v. *State,* 8 *Ga. App.* 129 (14) (68 S. E. 849).

4. In the thirteenth ground exception is taken to the ruling of the court upon the admission of the following question and answer: "Q. The last question I asked you was, after your investigation of these notes, what in your opinion was a reasonable market value of the notes in the Bank of Commerce that came into your possession at the time of the closing of the bank; and in your opinion after your investigation into the affairs of the Bank of Commerce, as you tell it, was the bank, at the time it was taken over by the Bank Examiner, really solvent or insolvent? A. Insolvent." The movant objected to this question and answer, on the grounds that the answer "was based upon an investigation and not on any knowledge of the witness or based on any fact that the witness knows, the witness not having testified that he knows a single individual maker of the notes or knows anything about their financial standing, and his investigations are necessarily based on the opinion of somebody else, and his testimony would be an opinion based upon an opinion and would be hearsay; and

on the further ground that the witness had not qualified in such a way as to give an opinion, he having testified that he had not taken the matter up with any of the parties, with one or two exceptions which were named, and that he did not know of his own knowledge what property or anything of the kind any of the makers of these notes had, or that he had any individual knowledge as to their financial status or condition, and that all he knows about them was that other people had told him, and the question as asked calls for a conclusion of the witness based on hearsay and the opinion of other people, and that such opinion can not be legally based upon the opinion of others." Learned counsel for plaintiff in error reinforce their argument as to the inadmissibility of the testimony by an extract from Lawson on Expert and Opinion Evidence (2d ed.), 474, as quoted by this court in *Central Georgia Power Co.* v. *Cornwell*, 139 *Ga.* 1, 4, 5 (76 S. E. 387, Ann. Cas. 1914A, 880), as follows: "The following have been held not qualified: Persons who are shown merely to have 'heard' of sales in the neighborhood, without stating how, where, or from whom, and do not profess to have a knowledge of what lands are generally held for sale in the neighborhood; one whose knowledge of the market value of real estate is gathered from what others told him, and from facts coming under his observation in a visit of six days to the place of its location, one and one half years after the transaction in question; a witness who is acquainted only with the value of the gas plant and of gas structures and machinery generally, and does not know the value of the land owned by the company, or of land in its vicinity; one whose only knowledge was limited to a period eight years earlier; one who has never seen the property or been in the neighborhood; one who has resided near the lands, but in another town, for twenty-nine years, and had for eleven years been an assessor of taxes, not having dealt in real estate in the town in question, nor near where the lands were located, but knew of sales near the land in question. An essential test, it is said, of the competency of witnesses to give an opinion as to the value of land is that they affirmatively appear to have personal knowledge of the subject-matter of the inquiry." This court concludes: "It seems clear, from the authorities cited above, that a witness is qualified to testify to the market value of land, 'if he has had an

opportunity for forming a correct opinion' as to its value. . . . If a witness living at a distance from the land sought to be condemned had no opportunity for knowing the value of land in that community, or of the particular land in controversy, he would be incompetent to testify as to its value."

We confess that after a somewhat mature consideration of the extract from Mr. Lawson's work as applicable to the present case, we are unable to say that the trial judge erred in admitting the testimony of which complaint is made in the thirteenth ground of the motion for a new trial. In the first place, the objection in the present case was made to the inadmissibility of the evidence, and not to the competency of the witness. It is true that in several of the objections the point was presented that the witness was not qualified as an expert, and therefore in these particular instances the objection was made that he was not competent to give the testimony sought to be excluded; but in what was said by Lawson, supra, he was dealing specifically with the competency of witnesses; and whenever anything said by him apparently conflicts with our well-settled rulings as to the admissibility of evidence upon the subject of value, and especially where his statements are contrary to rulings of this court, the latter must prevail. It is clear that Mr. Lawson was dealing with the value of land, and the cases cited by him had reference to dealings of that character. In the case before us, as stated in the brief for plaintiff in error, the witness had been placed in charge of the bank's books, papers, and assets until he assumed the office of judge of the superior court. We concur in the opinion of counsel that perhaps the fact that the witness was judge of the superior court at the time he testified would increase the injury to the plaintiff in error were he permitted to give testimony which was for any reason inadmissible, for necessarily his position in the community would tend to add to the weight and credibility which a jury would give his testimony upon any subject. In all such instances, as we have tried to do in the present case, it is the duty of the court the more cautiously and carefully to consider the merits of the contention. But after all, the only real question is whether or not the testimony should have been repelled by the lower court, and this regardless of the personality of the witness, whoever he may be or whatever may be his position. We realize

that the question involved in this exception is one of great gravity, because, as argued by counsel for plaintiff in error, the insolvency of the bank is one of the essentials of the crime with which the defendant stood charged, and one accused of the offense alleged in this case should not be convicted at all unless the jury is satisfied beyond a reasonable doubt that the bank was insolvent at the time as charged in the accusation, whether indictment or presentment. Two questions arise as to this exception: (1) In a prosecution for the fraudulent insolvency of a bank, and where the accused is sought to be held responsible therefor, can a witness testify as mere matter of opinion that said bank was insolvent? (2) And if so, under what conditions will a witness be permitted to so testify? We think that a witness may be permitted to testify that in his opinion a bank was insolvent at a certain time, although as a general rule witnesses are not permitted to testify as mere matter of opinion to the existence of an essential fact which is necessarily submitted to the jury for a finding of fact where such finding may of itself be conclusive of the case. The definition of the term "insolvent" as applied to banks is not the same in all jurisdictions, but in this State it has been precisely defined and is well established.

From what has just been said it is evident that competent testimony as to the exact status of a bank by analysis and comparison between its apparent assets and its admitted liabilities is a proper method of determining the question of insolvency as of the date when the insolvency was charged. The value of the assets is one of the most important features in the case; and in determining the question of whether the bank in question is solvent or insolvent, and though the opinion of a witness that a given bank was insolvent, without the statement of any antecedent facts upon which that opinion was based, would be valueless, the opinion as to insolvency can properly be based upon an opinion as to the value of its assets if its liabilities are admitted or not in dispute. Granting that the liabilities of a certain bank are $80,000 and it is shown that its assets are only worth $60,000, there could be no question that the bank is insolvent. On the other hand, if the liabilities of the bank were $80,000 and the value of its assets were shown to the satisfaction of a jury to be $100,000, the bank would not be fraudulently insolvent. It is for the jury to de-

termine the value of the assets in either instance, though the result depends upon their finding as to the value. As previously stated, evidence of value is always opinionative, and the fact that an opinion as to insolvency may be based upon an opinion as to value only makes an exception to the general rule that generally the opinion of a witness based upon the expressed opinion of another is not admissible. While hearsay is generally inadmissible (Civil Code, § 5762), there are several exceptions to the rule under which it is generally excluded, and it is evident that the value of the assets of a bank must be determined by the opinion of witnesses expressive of their judgment upon the subject, and in determining the weight of this testimony the jury of course may and will consider the reasons given by each of the witnesses for fixing the estimate of value made by him, and the jury should apply the testimony in accordance with the weight of the reasons given by the witness for having formed his ultimate conclusion as to the value of the assets.

We do not think that the witness James Maddox was incompetent to express his opinion as to the value of the notes and other evidences of indebtedness owned by the Bank of Commerce, even though he did not make an effort to collect from more than two of the makers of the notes held by the bank, or because he did not know of his own knowledge any of the makers of the notes or had no personal knowledge of their financial status, and all he knew about them was what other people had told him. Further cross-examination might have elicited from the witness the names of the persons from whom he obtained his information and upon whose opinion he based his opinion as to the value of the assets, but no such effort to put the means of his information before the jury appears to have been made. The mere fact that the witness as liquidating agent obtained his information as to the solvency of the makers of the notes in his hands from persons residing in the same county with the makers, and who may have been fully acquainted with the financial condition of the makers—their solvency or insolvency, would not of itself argue that the witness Maddox had not formed a correct opinion, though it would be for the jury, either from the evidence adduced upon the trial or from other evidence that might have been developed from further examination of the witness, to conclude and find that the reasons which

induced the witness to conclude that the assets of the bank were uncollectible presented no sufficient reason for the witness having formed the opinion announced by him. It is argued that it is not even stated in the evidence of the witness whom he asked about the value of the notes, or what opportunity those parties had to form a correct opinion as to the value of the notes. As already stated, it was as much in the power of the one party on cross-examination as of the other on direct examination to show from whom he derived his information. As to the knowledge of facts on which the opinion of a witness may be predicated, see *Slaton* v. *Fowler*, 124 *Ga.* 955 (53 S. E. 567). *Central R.* v. *Wolff*, 74 *Ga.* 664; *Miller* v. *Luckey*, 132 *Ga.* 581 (64 S. E. 658).

In the fourteenth ground of the motion for a new trial it is recited that objection was made to the following question and answer: "Q. To what extent was the bank insolvent, in your opinion? A. More than $80,000," and the plaintiff in error moved to exclude the question and answer on the grounds that the question as to the solvency or insolvency of the bank was for the jury, and that the witness had not given any facts or sufficient facts as to the assets and liabilities or anything else to warrant the question and answer. This witness had testified that he was placed in charge of the books and accounts, notes, and all of the assets of the Bank of Commerce after the superintendent of banks took possession of that institution, and it is developed in the evidence that he made an examination and inspection of both the value of its assets and the extent of its liabilities, which we think was as thorough as could be expected in this case or under similar circumstances in any other case. But the value of his testimony —its evidentiary weight—was a question exclusively for the jury. The fact that in the opinion of this witness the bank was insolvent to the extent of more than $80,000 would not of itself render the testimony inadmissible. It would be for the jury to appraise the value of this opinion for itself, and give it such weight as the jury thought proper, or disregard it altogether. Without a statement of the specific fact or facts upon which his opinion is based, a witness can not offer a bald statement of his opinion as to any fact which is essential to the formation of the opinion of the jury upon the same subject, and thus seek to settle by his mere personal opinion the issue which the jury has been empaneled to

determine. It is the exclusive province of the jury to express its opinion as a mere conclusion, as they do in rendering a general verdict; but a non-expert witness can not substitute his opinion for that of the jury, nor can he declare an opinion without submitting to the consideration of the jury the facts or the reasons upon which the opinion of the witness is based and upon which the value of the testimony before the jury will depend. The rule which permits an expert to give his opinion without stating the facts upon which it rests is an exception, because the jury may reject the opinion of an expert altogether, as it can not do in the case of a witness who testifies only as to the existence of facts. In the latter case the jury must believe the facts stated by the witness, unless he is impeached in some manner or otherwise discredited, though they have perfect liberty to disagree with his opinion if they do not think that the conclusion reached by him is the inference that can properly be deduced from the facts stated by him. In this case, treating the witness as non-expert, the jury was not obliged to reach the same conclusion as that embodied in the question and answer with which we are now dealing; but the prosecution had the right to have the jury appraise this opinion in the light of the facts stated by the witness. The law does not prescribe the number of facts or the character of the facts which must be stated by a non-expert witness as a preliminary to this witness being permitted to give an opinion. If such a witness gives even one fact which bears reasonable relation to the subject under investigation, he may give his opinion for what it is worth. It is to be presumed, if the reason given for his opinion is irrational or preposterous, that the jury as men of ordinary intelligence will entirely disregard his opinion; and the same thing would be true if the witness stated a large number of totally irrelevant facts as the reason why he entertained the opinion he expressed. So we conclude that the court did not err in overruling the objection to this testimony. The same ruling applies to the complaint made in the fifteenth ground of the motion, where the witness testified to the same effect and a similar objection and motion to exclude was made. There was also interposed the objection "that the witness has not qualified to give an opinion." As just stated, we are of the opinion that the testimony was admissible as that of a nonexpert, conceding that he had not qualified as an expert

in the matters with relation to which he was purporting to testify. We think that the court properly held that the jury was entitled to consider his opinion as based upon the facts stated. It is strongly urged, however, that the witness had testified that he did not know any of these people or any of the makers of these notes, with possibly a few exceptions, and that he had not seen some of the property referred to. This amounts simply to an objection that the testimony of the witness as to value was based upon the opinions of others. Value is a matter of opinion, and the opinion of a witness on the subject of value of any class of property may properly be derived from the opinion of others who are shown to be acquainted with the property and its probable value. The testimony was admissible; for in all cases testimony as to value, being opinionative, is not conclusive, but it is admissible for the information of the jury, and may be more or less persuasive according to the weight attributed to such testimony by the jury.

5. Objections were made to the testimony set forth in grounds 17, 18, 19, and 20 of the motion for a new trial, to proof tending to show that about $40,000 or more of notes belonging to the bank were placed by the defendant in the hands of John M. Berry shortly before the failure of the bank, without any action to that effect being taken on the part of the directors. Also as to the transfer of certain notes by the defendant to his brother-in-law, J. E. Satterfield. The objections were based upon the contention that this testimony was immaterial and irrelevant. In our opinion this testimony was properly admitted, because it was relevant for the purpose of showing mismanagement on the part of the defendant while in charge of the affairs of the bank.

6. In ground 21 of the motion objection is made to the testimony of James Maddox, to the effect that he saw the solicitor-general take from the door of the Bank of Commerce the notice which he had in his hand while testifying, which had become illegible, that the contents of the notice were that the bank, "under certain sections of the banking act or the act of the legislature of Georgia, was taken over by the State Banking Department," and that it was not signed by N. K. Bitting, and bore date of January 2, 1925. This testimony and the paper were admitted in evidence over the objection that they were immaterial and irrelevant and not binding on the movant. Since the paper had become illegible,

the circumstances do not differentiate this case from one where such a notice is lost or destroyed, or from a case where it is sought to prove the writings on a monument. The testimony of the witness as to the original contents of the paper, though secondary evidence, was admissible in view of the impossibility of producing primary proof. In the twenty-second ground of the motion objection was made to the testimony of Wesley Shropshire, to the effect that no dividends had been paid to any of the depositors of the bank, so far as he knew, though he would have known if any dividends had been paid, and that according to his information from the bank's statement there was something like $1,200 or $1,300 on hand, on the ground that this testimony was immaterial and incompetent, because it related to circumstances subsequent to the closing of the bank. This testimony was admissible as a circumstance illustrating whether the bank was solvent or insolvent at the time it was closed. The jury had before it testimony as to the value of the assets and liabilities of the bank, and much testimony tending to show its insolvency; but this would not afford any reason why the jury might not also consider the circumstance that only $1,200 or $1,300 was on hand with which to pay several thousand dollars due to the depositors, as additional proof that the bank was insolvent at the time it was closed.

7-10. Elaboration of these four headnotes may be omitted beyond the following: In the thirty-second ground of the motion for a new trial complaint is made that the trial judge instructed the jury: "In order to convict the defendant in this case, the jury must first be satisfied beyond a reasonable doubt that the Bank of Commerce, of Summerville, Georgia, was insolvent prior to the finding of this indictment." Exception is taken to this instruction, upon the ground that the guilt or innocence of the defendant was made to turn solely upon the question whether or not the bank was insolvent prior to the finding of the indictment, even though such insolvency may have occurred after the closing of the bank or at a time when the defendant was not connected with the bank; and because said charge was calculated to and did lead the jury to believe that the defendant should be convicted if it was shown beyond a reasonable doubt that the bank was insolvent *at any time* prior to the finding of the indictment. The in-

struction as quoted is certainly a correct abstract statement of the law. No man can be convicted of an offense alleged to have been committed after the finding of the indictment, and no reason appears from anything said by the judge in the course of his charge which will support either of the exceptions just stated. The trial judge throughout the charge confined his instructions so specifically to the evidence, and the evidence was so sufficient to satisfy the jury that the bank was insolvent before it was placed in the hands of the superintendent of banks, that the accused was not harmed by this instruction.

11-13. In ground 27a of the motion for a new trial complaint is made that the judge charged the jury: "I want to read you certain sections of the banking law that will guide you in determining whether or not the affairs of the bank in question were legally administered. Section 7, page 67, of the banking law says: The board of directors, at the meeting at which report of examination shall be made to the board of directors, that is, the semi-annual examination, is read, shall, by resolution entered on the minutes, require that all debts due to the bank, which are past-due for a period of one year, and which are not amply secured, shall be collected, placed in suit, or charged to profit and loss; that all past-due interest shall be collected upon any note upon which no interest has been paid within the last preceding twelve months, or that said note shall be collected, put in suit, or charged to profit and loss; and that all assets or claims in favor of the bank, which in the opinion of the directors are worthless or uncollectible, shall also be charged to profit and loss and not included in the list of assets of the bank. Said board shall at such meeting also require that all loans in excess of the amount herein authorized to be made shall be reduced at once, so as to bring them within the proper amount. A certified copy of the resolutions of the board acting on the matters brought to their attention in the report of the semi-annual examination shall be filed with the superintendent of banks within ten days after said meeting shall have been held.

"Section 13, page 70, of the banking law declares: No bank shall be allowed to lend to any one person, firm, or corporation more than twenty per cent. of its capital and unimpaired surplus. And no loan shall be made in excess of ten per cent. of the capital and sur-

plus, except upon good collateral or other ample security, and with the approval of a majority of the directors or of a committee of the board of directors authorized to act, which approval shall be evidenced by the written signatures of said directors or the members of said committee. Now that applies to a loan made subsequent to August 21st, 1922; prior to that time the law provided that no bank should be allowed to lend to any person, firm, or corporation more than thirty per cent. of its capital and unimpaired surplus and undivided profits; and the other provisions of the law prior to August 21st, 1922, were the same as in section 13 which I have just read to you; and the law as it stood prior to August 21, 1922, applies and regulates the making of loans prior to the passage of the act of August 21, 1922, that is, if you find that any loans were made prior to August 21st, 1922.

"Section 27, page 77, of the banking law provides: Every bank whose deposits are subject to check shall at all times maintain a reserve of fifteen per cent. of the amount of its demand deposits and five per cent. of the amount of its savings and time deposits. Savings banks and trust companies—the part with reference to savings banks and trust companies does not apply to the bank in question, and I will omit that. Such reserve shall consist of lawful money of the United States, gold certificates, Federal Reserve or National bank notes, in the office and vaults of the bank, and of moneys on deposit subject to call with other banks or bankers, such banks or bankers to be approved by the superintendent of banks; provided that the reserve against savings and time deposits may be invested in bonds of the United States or of this State at the market value thereof.

"The State insists in this case that the defendant on trial has violated those sections of the banking laws—those provisions of the banking law. The defendant denies that he has violated any provision of the banking laws, but insists that if there was any violation of any banking law it was not intentional on his part. Now you would not be authorized to find the defendant guilty of a violation of any of these provisions of the banking laws which I have read you; the defendant is being tried on the charge made in the bill of indictment; but I have given you these provisions of the law that you may consider them in passing upon the guilt or innocence of the defendant of the crime charged against him in

this indictment. Now in passing on this question as to whether or not the defendant has legally administered the affairs of the Bank of Commerce, you are the judges of that; you are to settle that question from the evidence in the case, taking into consideration along with the evidence the defendant's statement, as to whether or not the defendant in this case, either alone or in connection with other directors of the Bank of Commerce of Chattooga County, violated any of the provisions of the banking laws to which I have called your attention. In passing upon the question of whether or not the affairs of the bank involved in this case were legally administered, in so far as such administration was in the hands of the defendant, or under his supervision, control, or management, either alone or in connection with or in conjunction with other directors, you will consider the evidence and the defendant's statement as applying to the sections of the banking laws read to you, and which the State contends, and which the defendant denies, were intentionally and knowingly violated by the defendant. If the defendant intentionally and knowingly violated the provisions of the banking law to which I have called your attention, his act in such respect would be illegal; if not knowingly and intentionally done, or if done by or through mistake or error, or as the result of mismanagement, you will not consider such conduct, if any such has been proven, as in violation of the law."

The court did not err in instructing the jury as to the acts denounced in the Code as illegal. The jury were instructed as to other acts made penal in the conduct of a bank. We do not think that the court erred in giving these instructions.

In the thirty-third ground of the motion complaint is made that the court charged the jury that under certain specified circumstances, if the bank became insolvent during the period that the cashier or director had in charge the management of the bank, the law placed the burden upon such cashier or director "of repelling the presumption of fraud thus arising by testimony, to the reasonable satisfaction of the jury, that the affairs of the bank had been fairly and legally administered, and generally with the same care and diligence that agents receiving a commission for their services are required and bound by law to observe; and if such showing is made, of which the jurors will be the sole judges,

such defendant would be entitled to an acquittal." It will be remembered that the language of the act is that under the circumstances to which the judge referred in his charge the jury "shall acquit the prisoner." The insistence of the plaintiff in error is that the words "would be entitled to an acquittal" are not the equivalent of the words "the jury shall acquit the prisoner." We do not think that the instruction in the form in which it was given was prejudicial to the accused, for it must be presumed that if the jury thought the defendant was entitled to an acquittal they would consider it a mandatory duty to acquit him; and construed in its strongest sense, the expression "the jury shall acquit the prisoner" is but a mandate to the jury to do its duty. It seems to us that when the judge tells a jury that under certain circumstances one accused of crime would be entitled to an acquittal, it is as full a direction to the jury to acquit the accused (if they believed his innocence established) as if the jury had been told that they should acquit the defendant. The plaintiff in error says that it is specially important that the jury should have been instructed as requested, because of the strong expression of the court in other portions of the charge that under stated conditions "the defendant would be guilty, and it would be your duty to so say by your verdict." We do not think that the judge could possibly have impressed the jury that he entertained an opinion that the accused was guilty by reason of the excerpt of which complaint is made.

In the thirty-fourth, thirty-fifth, and thirty-sixth grounds of the motion the plaintiff in error complains of the refusal of the court to give certain specified instructions, contending as to each that the charge requested was applicable and pertinent and stated clearly and explicitly a correct statement of law pertinent under the evidence, and that the defendant was entitled to have the jury charged as thus requested in the manner and form set forth therein. We are of the opinion that each of the requests was sufficiently covered by the instructions delivered in the charge, and that no harm could have resulted to the accused from the failure of the judge to use the precise verbiage in which these requested instructions were clothed.

14, 15. In the thirty-seventh ground of the motion complaint is made that A. C. Pinion, one of the jurors in the case, was dis-

qualified because he was biased and prejudiced against the movant on account of some alleged mistreatment with reference to a land transaction. The trial judge is the exclusive trior of the evidence in investigations touching the competency of jurors. Under the evidence in the record, we can not say that there was sufficient evidence to require the judge to find that there was in fact any bias or prejudice on the mind of the juror who was attacked upon that ground.

In the thirty-eighth ground of the motion for a new trial it is insisted that the movant is entitled to a new trial because W. R. Stephenson, one of the prosecutors in the case, who had contributed to a fund for the payment of the fee of Mr. Graham Wright as specially employed counsel for the State, is a brother of J. G. Stephenson, who acted as bailiff in attendance upon the court during the trial of this case, and that both W. R. Stephenson and J. G. Stephenson are brothers of Mrs. J. C. Cordle, who conducted the hotel where the jury was fed and "entertained" during the trial of the case. This ground is supported by affidavits of the movant and his counsel, in which it is stated that the deponents knew of the relationship as above set forth, but did not know that W. R. Stephenson had contributed to the fund raised to employ the special counsel for the State. As frequently held by the writer, too much caution can not be observed in excluding from the jury any extraneous influence which may tend to warp their judgment or affect the verdict. It is safest to avoid even the appearance of evil. However, it does not appear in this case that either the prosecutor or his brother, the bailiff, or Mrs. Cordle, had any communication whatever with the jury as a whole or with any member thereof with regard to the case. While the proprieties would suggest that persons related to the prosecutor in a criminal case should not be brought in contact with the jury charged with the trial of such case under any circumstances or at any time during the trial, still the fact of such contact will not require a new trial when it affirmatively appears that there was no communication with regard to the case or any hint or suggestion as to the result thereof, and that therefore no injury could have resulted to the accused. The fact that the jury were "entertained" at the hotel in this case differs from those cases in which this court has ruled that the entertainment of a juror by

counsel for one of the parties or by a party himself required the grant of a new trial, because it appears from the record in this case that the word "entertained" was inaptly used, since the county, as is usual in such instances, paid for the care of the jurors and bailiffs the price agreed upon between the innkeeper and the county authorities.

In the thirty-ninth ground the movant insists that he is entitled to a new trial because A. G. Gaylor and A. C. Pinion, two jurors who were selected and sworn in the trial of this case, were related to Elender Morton, a depositor in the Bank of Commerce, she being a niece by marriage of Gaylor and a first cousin of Pinion. This ground was considered by the judge upon his review of the trial. It is well settled that the judge is the trior of the competency of jurors, and his finding upon that point will not be disturbed unless it appears that there was an abuse of discretion upon his part. Under the law, in such instances the trial judge is the exclusive judge of the credibility of the witnesses and the weight of their testimony. In the present instance, upon the hearing of the issue made by the counter-showing of the State, there was evidence from which the judge was authorized to find that the defendant knew of the relationship of both jurors before they were empaneled and sworn. This being true, the acceptance of the jurors was a waiver of their disqualification, and the movant was not entitled to a new trial upon this ground. One who accepts a juror with knowledge that such juror is disqualified waives the disqualification.

16. The evidence supported the verdict returned by the jury. The defendant was shown to be a director and cashier of the bank and in active and sole charge of its affairs. The bank was shown to be insolvent. The capital and surplus amounted to $32,000, and yet two borrowers were shown to owe the bank over $50,000 upon notes unsecured and worthless. The defendant delivered a large portion of the assets of the bank to Berry and Satterfield just a few days before the bank was closed. The evidence shows that the defendant violated the provisions of the banking act as to the carrying of overdrafts, the maintenance of the legal reserve, making loans, and in other particulars.

*Judgment affirmed. All the Justices concur, except Hill, J., absent.*

BECK, P. J., concurs in the result.