## 39863. WELDON v. HAWKINS.

PER CURIAM.

Leroy Hawkins filed in Chatham Superior Court a petition for writ of habeas corpus seeking his release from Coastal Correctional Institution on the grounds that two convictions for burglary under which he was being held were unlawful. The habeas corpus court held a hearing and found that Hawkins' convictions should be set aside for want of effective assistance of counsel. The state appeals.

1. The state's first enumeration of error contends that the trial court erred in refusing to continue the hearing in order that the state might obtain further evidence. The trial court did not err in refusing to continue the hearing because no motion for continuance was made. The transcript of the hearing reflects the following colloquy between counsel for the state and the court:

*"THE COURT:* You think it would be a better plan to get more evidence?

*"COUNSEL:* I think it would be helpful to have it. Yes, Your Honor, I think it would be helpful to the court and certainly it would help me to understand exactly if we had [Hawkins' trial counsel] here and he could sit on the witness stand and tell us in more detail the circumstances surrounding this decision on his part."

The observation that additional evidence might be helpful is not the equivalent to a motion for continuance, and this enumeration of error is without merit.

2. The state next contends that the trial court erred in relying upon an affidavit of Hawkins' trial counsel when the affidavit was never introduced into evidence. The affidavit in question was prepared by the state, filed with the record in the case, and served upon Hawkins. It was not admitted formally into the evidence. Nonetheless, its content was first suggested by the state's counsel, and offered in good faith to assist the court in attempting to understand the contentions of Hawkins, who appeared without counsel.

*"COUNSEL:* Your Honor, I have an affidavit here that the court may want — to clear up some of the problems. There were two jury trials, evidently. This is an affidavit from petitioner's attorney ... I'll be glad to read this affidavit or submit it to the court, some three pages, I believe."

A party may not quarrel with the consideration of an affidavit which he himself has procured and submitted to the court. This enumeration of error is without merit.

3. The state's final enumeration of error contends that the trial court erred in finding that Hawkins was not provided effective assistance of counsel. That determination being within the province of the trial court as the trior of fact, it will not be disturbed unless unsupported by the evidence. *McDuffie v. Jones,* 248 Ga. 544, 551 (283 SE2d 601) (1981). Under this standard of review, we decline to hold that the finding is unsupported by evidence, and this enumeration, alike, is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 1983.

*Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General, Lamar C. Walter, Special Assistant Attorney General,* for appellant.

Leroy Hawkins, *pro se.*

WELTNER, Justice, concurring.

I enter this concurrence in a case lacking complexity and major impact because the circumstances leading up to our judgment today illuminate our criminal justice system. What follows is comment, not law, and is drawn from the meager record before us.

Hawkins' trial attorney executed the following affidavit:
"-1-
"That he was the attorney, court appointed, to represent Leroy

Hawkins in Criminal Case 4375, Bacon County Superior Court and in Criminal Case 4384, Bacon County Superior Court. In both cases Leroy Hawkins was accused of burglary and both cases resulted in a trial.

"-2-

"In Criminal Case 4375 Leroy Hawkins was accused of burglary of a residence wherein a stereo and clothing items were taken. Leroy was on probation and, according to my recollection, had nearly five years of probation and had been out of the penitentiary for only a couple of weeks. We entered into plea bargaining with the District Attorney and reached an agreement with him that Leroy could plead guilty and receive a five year prison sentence to run concurrently with any time that he would receive as a result of his probation revocation. The evidence against Leroy indicated that his probation would be revoked without a doubt and the five year agreement seemed to me to be in his best interest.

"Based on the evidence that the District Attorney had against Leroy, it was my opinion that he would be found guilty on a trial. We selected a jury and prepared to try the case. Subsequent to the selection Leroy decided that he would accept the plea bargaining agreement and plead guilty for the five year sentence. However, he changed his mind and we proceeded to trial with the original jury that had been selected. The jury was present in the courtroom during some of the plea bargaining preliminaries and I believe that they heard us change our plea from not guilty to guilty then back to not guilty. As a result of this and because of Leroy's record probably was known to several jurors, I mentioned to the jury in my opening statement that Leroy had problems of the past, and any prior convictions that were introduced into evidence were done by me.

"-3-

"After Leroy was found guilty and sentenced in Criminal Case 4375, he was confined to the Bacon County jail waiting to be transported to the State System. While in the Bacon County jail, he was allowed out of his cell and was able to walk around our small town. One night he was apprehended in Cohen's Department Store and again charged with burglary, this case being Criminal Case 4384.

"-4-

"On this occasion, Leroy was apprehended in the store by several police officers and he was wearing a new pair of boots that he had taken from the store and had money from the store in his pocket. A plea bargaining agreement could not be reached, we entered the plea of not guilty and Leroy had a jury trial. Prior to his being apprehended inside the store with the merchandise and money, Leroy had left his jail cell and purchased liquor at a local

establishment here in Alma and had been taking various pills.

"In our small community, the news of Leroy's exploits traveled rather rapidly throughout our community and I decided to defend Leroy on the basis that he was drunk, and not mentally responsible and that the real guilty party was our local sheriff that allowed Leroy the opportunity to travel around our community and purchase alcohol and enter stores while confined to the local jail. The jury was sympathetic and attempted to recommend medical help for Leroy, but, nevertheless, found Leroy guilty.

"-5-

"During his trial, I attempted to defend Leroy and I introduced his past record and his fellow inmates in the Bacon County jail, to testify that he was drunk and had been taking pills.

"-6-

"In both criminal cases, I do not know of any evidence that the state had that was favorable to Leroy that they did not disclose to me prior to trial."

(The date of the first conviction was March 22, 1981. The date of the second conviction was June 3, 1981).

On February 16, 1982, Hawkins filed his petition seeking release from the Coastal Correctional Institution in Chatham County on the following grounds:

"A. Ground one. Conviction obtained by a violation of the privilege against self incrimination.

"The court used past convictions to convict my self in court. That were befor. in the past.

"B. Ground two. Conviction obtained by the unconstitutional failure of the prosecution to disclose the defendant evidence favorable to the defendant.

"The D. A. did not have any evidence to show to convict myself."

On March 25, 1982, Hawkins filed in Chatham Superior Court a typed document styled "Demand for Trial." On March 31, 1982, the state filed a response admitting jurisdiction of the court but denying substantive paragraphs.

On April 6, 1982, the habeas court issued a writ requiring that Hawkins be brought before it on May 21, 1982, and allowing him to proceed *in forma pauperis.*

Thereafter, the court entered continuances of the hearing by orders dated May 20, 1982, June 23, 1982, September 9, 1982, and December 22, 1982. The last order set a hearing date for February 14, 1983.

On February 11, 1983 the state filed with the court the affidavit of Hawkins' trial counsel, and at the time appointed, the case of Leroy Hawkins commenced at last.

The state called a correctional officer who, as custodian of the records, testified that Hawkins was serving five years for burglary, and that his tentative release date was January 1987. Hawkins asked no questions, the witness was excused, and Hawkins took the stand.

The court asked Hawkins to explain his complaint, and he responded as follows: "Well, I really don't know how to go about to do that because you know I don't know nothing about law, you know, I ain't never done something like this before. You have to — you know — kind of explain things to me because —."

The record reflects the patient efforts of the court to understand Hawkins' claims for relief. At one point Hawkins undertook to explain the circumstances of the case for which he was convicted in January 1981 ("See this guy, he moved into this trailer and he was going with my cousin and he moved back on the base. He was in the Navy, so he kept moving stuff out of his trailer and he brought it down to my cousin in Kingaman, Georgia, to keep for me — for her to keep for him and —."), but was properly deterred.

It was at this point that the state, genuinely seeking to aid the court in understanding what was then unintelligible, mentioned the affidavit.

"Your Honor, I have an affidavit here that the court may want — to clear up some of the problems. There were two jury trials, evidently. This is an affidavit from petitioner's attorney . . . I'll be glad to read this affidavit or submit it to to to the court, some three pages, I believe.

"THE COURT: I think this is the same one that he has, I guess.

"COUNSEL: Yes, sir, I imagine so, Your Honor.

"HAWKINS: [I have a] copy of it, too.

"THE COURT: Well, let me see it. Let me make sure it is the same one.

"COUNSEL: Right, that's our notice.

"THE COURT: O.K."

There followed a discussion between counsel and court, terminating in the court's announcement of its decision: "I do not think he states it that well, but I think if the whole evidence is looked at, it would show that he is entitled to it, so let's just do that rather than have any further testimony from the attorney." Significantly, Hawkins said nothing at all after confirming that he had a copy of the affidavit.

On February 28, the trial judge entered an order granting relief and setting aside the two burglary convictions. The order directed that Hawkins be ". . . remanded to the custody of Respondent for prompt transfer to local authorities pending re-trial in accordance

with the law."

Twenty-five days later, on March 25, 1983, the state filed its notice of appeal to this court. The state's brief was received here on May 2, 1983, and Hawkins' response was received on June 8, 1983.

Because this is comment and not judgment, it may be permissible to suggest a reconstruction of the scene of Hawkins' first trial.

A visiting judge is assisting in the disposition of criminal matters. Witnesses, defendants, prosecutors, defense lawyers, and family members are milling around the courtroom, while seated in the courtroom are veniremen summoned to try the week's cases. Hawkins was a few days out of prison when he was arrested for burglary, with nearly five years of parole time left (which might be revoked by a simple hearing, without necessity of conviction). The district attorney suggested a five-year sentence in exchange for a guilty plea, to run concurrently with any time ordered served pursuant to parole revocation. Hawkins did not agree and, notwithstanding the recommendation of his appointed counsel, pleaded not guilty and proceeded to pick a jury.

After jury selection, Hawkins changed his mind and decided to accept the proposed plea bargain. The entry of his plea of guilty was undertaken in the courtroom while his jurors — *already* selected to try his case — remained in attendance. Midway through the entry of the guilty plea, Hawkins again changed his mind, and persisted in his plea of not guilty. The case was put to the same jury, and the jury found Hawkins guilty.

That sequence arose from the concurrence of several circumstances — the first being a vacillation on the part of Hawkins himself. The second was doubtless the want of adequate facilities in which to house jurors apart from the courtroom while other proceedings are taking place. I am sure that scene is repeated many times over in many courtrooms, and it is bound to create potential trouble every time it occurs. Jurors who observe the successive entry of guilty pleas and the imposition of sentences come (it can be argued) to believe that *every* defendant is guilty, and that the only excuse for a trial is a stubborn refusal of a defendant to admit his guilt, as all the others have done.

The principal systemic defect in the first proceeding, then, fairly might be said to be a want of adequate facilities for the operation of the criminal justice system. To that must be added Hawkins' irresolution, and the evidence against him, whatever it may have been.

The second conviction bespeaks a combination of indulgence and humaneness. From his trial counsel's affidavit, we know that the

sheriff permitted Hawkins, as he had permitted others known to him, to leave the jail on a regular basis to walk about the town. (Indeed, small county jails might lack facilities for exercise, and inmates might well find their bodies atrophied without an occasional walk — such as permitted in this case).

We do not know how many months Hawkins had been walking the streets of Alma before he was apprehended in Cohen's Department Store. That arrest, as recounted by his lawyer, was accomplished by several police officers who found Hawkins inside the store, wearing a new pair of boots which belonged to the store, and carrying money stolen from the store. Apparently, before entering Cohen's, Hawkins had purchased and consumed some alcoholic beverage.

Hawkins' trial counsel says, with unquestionable verity: "In our small community, the news of Leroy's exploits traveled rather rapidly." That phenomenon is what we call the "small town syndrome," and we recognize it as a fact if not always a significant legal principle.

Accordingly, the lawyer's tactical decision to identify "the real guilty party" as the sheriff who had permitted Hawkins to travel around the community while confined to the local jail cannot be rejected out of hand. What else could he do? Hawkins would enter his second trial for burglary in three months, faced by several police officers placing him in Cohen's Department Store, wearing stolen boots and carrying stolen money.

While that approach seems more a request for pardon rather than a legal defense, we know that juries have pardoned many a defendant in the past.

Further, I find it hard to contemplate a second trial, even in another jurisdiction, wherein the jury would not know, properly, that Hawkins was sentenced to prison and confined to jail at the time he was discovered in Cohen's.

The principal systemic difficulty of the second conviction was the sheriff's indulgence — from kindness rather than from dereliction, I think, given what I am assuming to be a want of adequate custodial facilities. Nor can we overlook the irrefutable evidence of guilt.

I turn now to another troubling aspect of the case.

Hawkins filed his petition for writ of habeas corpus on February 16, 1982. Relief was granted on February 28, 1983 — one year and twelve days later. Pleading, appearing, and appealing, all successfully, and without a lawyer, it would seem as though he has won a victory — *until* we note that on the date of the rendition of judgment by this Court, Leroy Hawkins is exactly where he was when

he filed his successful petition over 16 months ago.

It should be noted also that in affirming the habeas court we do not see to the release of Leroy Hawkins — only to his return to Bacon County for retrial on two burglaries committed in the year 1981. It should be noted further that the evidence against Hawkins is likely still there, and it is, understatedly, overwhelming.

It must be noted that the legal problems of this case are just beginning. As example, can Hawkins' parole still be revoked? (Perhaps that is already the case. The record is silent).

When will he be retried? (The first week of the next regular term of Bacon Superior Court is four months hence).

Assuming that somehow he might be able to post security for a bond, where is the balance between inordinate pretrial confinement and an established propensity to commit burglaries?

But all of these are difficulties which must await another day and another court. It cannot be gainsaid that Leroy Hawkins has won a victory — but it is one disturbingly akin to the surgeon's classic observation: The operation was a success, but the patient died.