## 40296. BROWN v. THE STATE.

SMITH, Justice.

Charles Harris was shot twice and killed in his Atlanta apartment during the mid-afternoon hours of December 30, 1981. Appellant Reginald Brown was arrested, charged with armed robbery and murder in connection with the shooting, tried, and convicted. On appeal of this conviction and a sentence of life imprisonment for murder and a concurrent 20-year sentence for armed robbery, he raises four enumerations of error. We affirm.

The evidence introduced at trial showed that appellant and Harris were partners in a failed business venture and as a result appellant owed Harris $200. At the time of the shooting Harris was holding stereo equipment and cameras belonging to appellant as security on the debt. On the afternoon of December 30, Harris and his girl friend, Audrey Wick, arrived at Harris' apartment at 3:30. Appellant, who was waiting in the parking lot when they arrived, greeted Harris. Wick drove away as the two men entered Harris' apartment. Harris carried with him a fish lunch and a drink. This was the last occasion Harris was seen alive.

After several unsuccessful attempts to contact Harris by telephone on December 30 and 31, Wick became concerned and on January 1 she returned to his apartment. When she arrived the front door was ajar. Wick went inside and discovered Harris' lifeless body lying on the bedroom floor. An autopsy determined that he was killed by two .38 caliber bullets fired at point-blank range into his chest and

back. Although the precise time of death could not be determined, several facts indicated that Harris died on the afternoon of December 30: (1) He was not seen or heard from after this date; (2) Wick and another witness testified that they both attempted, unsuccessfully, to telephone Harris that evening and on December 31; (3) Police investigators discovered in the apartment an uneaten fish dinner and an unfinished drink which was later identified by Wick as the food Harris had in his possession when she dropped him off on the 30th.

At trial the state offered the testimony of two persons to whom appellant admitted shooting Harris. Blake O'Farrow, an acquaintance of appellant, testified that appellant visited his home during the first week of January 1982. While there appellant described shooting Harris: "I shot him once and he started hollering and screaming and I figured I had better pop him again to keep him quiet." Appellant further told O'Farrow how he had used a pillow to muffle the gunshots, and that he and a friend later returned to Harris' apartment to wipe away any incriminating fingerprints. A second state witness, Malcolm Williams, testified that during the first week of January he heard of appellant's complicity in the killing from O'Farrow. Williams then called appellant to ask him "what was the deal with Charles Harris." Appellant replied simply that "I got tired of the brother [Harris]," and "I had to do what I had to do . . . I had to go Philly on him."[1]

Acting on information provided by O'Farrow, DeKalb County police arrested appellant at the Decatur residence of Thelma Bell, his girl friend. With Bell's permission, officers searched the residence and discovered several items later identified as belonging to Harris, including a camera and accompanying bag, a brief case, and a backgammon board.

Appellant took the stand at trial and admitted having been present in Harris' apartment during the afternoon of December 30, but asserted that he and Harris talked amiably for approximately 30 minutes and parted company on good terms. He denied shooting Harris, stealing from him, or admitting to O'Farrow and Williams that he had shot Charles Harris. In addition to his own testimony, appellant presented testimony of a former employer, who swore as to appellant's good character and reputation in the community. He also presented the alibi testimony of James Shavers, appellant's sergeant

---

[1] State witness O'Farrow, a Philadelphia native, testified that in Philadelphia (appellant's home town), this expression meant "to rough somebody up or do harm to somebody."

while in the Army, who testified that he saw appellant at "either the Big Star or Seven Eleven" between "5:30 and 7:00 in the evening . . . before or after New Year's."

1. Although not enumerated as error, the evidence authorized any rational trier of fact to find appellant guilty beyond a reasonable doubt of the offenses of murder and armed robbery. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration appellant contends that the indictment charging him with murder and armed robbery in separate counts was faulty. As best we understand appellant's argument, he contends that (1) he cannot be indicted for both offenses because armed robbery is a lesser included offense of murder, and (2) he cannot be indicted for armed robbery, as the evidence showed that Harris was already dead at the time his personal articles were taken from his apartment. The first contention is groundless, as "[a]rmed robbery is not a lesser included offense of the offense of malice murder." Barrow v. State, 235 Ga. 635 (221 SE2d 416) (1975). Cf. Burke v. State, 234 Ga. 512, 518 (216 SE2d 812) (1975) (Hill, J., concurring) (distinguishing felony murder).

Appellant's second contention was decided adversely to his position in Moore v. State, 233 Ga. 861 (213 SE2d 829) (1975), where this court held that Moore was guilty of armed robbery despite the fact that immediately prior to taking his money Moore shot the victim, rendering him unconscious at the time of the taking. The evidence in this case authorized the jury to find that appellant shot Harris immediately before taking his personal belongings. Thus his actions fell within OCGA § 16-8-41 (Code Ann. § 26-1902), which "clearly contemplates that the offensive weapon be used as a concomitant to a taking which involves the use of actual force or intimidation (constructive force) against another person." Hicks v. State, 232 Ga. 393, 403 (207 SE2d 30) (1974). This enumeration is without merit.

3. Next appellant contends that he was denied effective assistance of counsel, claiming that trial counsel retained by him failed to adequately investigate the case, interview witnesses, or conduct a thorough examination of the alibi witness Shavers. Appellant's contentions on this issue center around Shavers' vague and unsatisfactory alibi testimony. Although our examination of the record provides no support for appellant's ineffective assistance claim, we need not address the merits of this enumeration. Appellant has failed to demonstrate how he was harmed by the line of questioning employed by trial counsel. There has been no factual showing on appeal of what Shavers or other alibi witnesses (if any) could have testified to if contacted, called to testify, and examined

differently. In addition, appellant has failed to include a transcript of the hearing on the motion for new trial to demonstrate that the issue was raised,[2] that trial counsel was heard on the issue, or that a ruling was made. Under these circumstances, we need not address this enumeration. See *Simpson v. State,* 250 Ga. 365, 367 (297 SE2d 288) (1982).

4. The trial judge charged the jury: "The evidence is of two kinds, ladies and gentlemen of the jury, direct evidence and indirect evidence, or circumstantial evidence. Direct evidence is that which points immediately to the question at issue. Indirect and circumstantial evidence is that which only tends to establish the issue by proof of various facts and circumstances sustaining by their consistency the hypothesis claimed. To warrant a conviction upon circumstantial evidence, the proven facts shall not only be consistent with the hypothesis of guilt but shall exclude every other reasonable hypothesis, save that of the guilt of the accused of the offense with which he is charged." Citing *Redwine v. State,* 207 Ga. 318 (61 SE2d 481) (1950), appellant contends that the trial court erred by not also charging that "In making a determination of whether any other reasonable hypothesis exists, the defendant's explanation must be taken into consideration insofar as it is consistent with the circumstantial evidence properly admitted."

There can be no question that, as far as it went, the charge given was correct. It was practically a verbatim restatement of the applicable sections of the Evidence Code. See OCGA §§ 24-1-1 (3) & (4) (Code Ann. § 38-102); 24-4-6 (Code Ann. § 38-109). Appellant's suggested additional charge on circumstantial evidence, while a correct statement of the law, was not required here since the state's case was based not solely on circumstantial evidence, but on direct evidence as well.[3] *Redwine v. State,* supra, is distinguishable, as that case involved wholly circumstantial evidence. The charge as given was a full and correct statement of the applicable law, and no error appears.

5. Finally, appellant enumerates as error the trial court's failure to charge on alibi, though not requested to do so by appellant. In *Rivers v. State,* 250 Ga. 288, 300 (298 SE2d 10) (1982), we adopted the

---

[2] Appellant's motion for new trial does not raise the ineffective assistance issue.

[3] The testimony describing appellant's admissions of guilt following the shooting was direct evidence of appellant's guilt. See *Fields v. State,* 221 Ga. 307, 309 (144 SE2d 339)(1965); OCGA § 24-1-1 (3) (Code Ann. § 38-102).

rule that, absent a request, it is ordinarily not error to fail to charge specifically on alibi. Thus the trial court's failure to charge on alibi was not erroneous in the absence of a specific request by appellant to so charge. This enumeration is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 2, 1983.

*William D. Smith,* for appellant.

*Robert E. Wilson, District Attorney, Ann Poe Mitchell, Thomas S. Clegg, Assistant District Attorneys, J. Michael Davis, Assistant Attorney General,* for appellee.