HUNSTEIN, Justice,
dissenting.
I firmly believe that the grand jury’s duty to protect individuals against unfounded criminal prosecutions requires grand jurors to be unbiased and impartial, particularly where as in this case, grand jurors are victims of the alleged crimes of which the accused has been charged. I believe that the accused may assert his right and challenge grand juror bias by filing a pretrial motion. Because Brown filed timely pretrial motions and demonstrated grand juror bias in this case, I must respectfully dissent.
1. An Unbiased and Impartial Grand Jury
“An indictment returned by a legally constituted and unbiased grand jury,.. .if valid on its face, is enough to call for trial of the charge on the merits.” Costello v. United States, 350 U. S. 359, 363 (76 SCt 406, 100 LE 397) (1956); see Lawn v. United States, 355 U. S. 339 (I) (78 SCt 311, 2 LE2d 321) (1958); see also Beck v. Washington, 369 U. S. 541 (I) (82 SCt 955, 8 LE2d 98) (1962) (Douglas, J., dissenting) (“It is well settled that when either the Federal Government or a State uses a grand jury, the accused is entitled to those procedures which will insure, so far as possible, that the grand jury selected is fair and impartial.”). “A number of courts have interpreted this line of Supreme court cases as recognizing a constitutional requirement that an indictment be returned by an unbiased grand jury.” United States v. Finley, 705 FSupp. 1297, 1307 (IV) (N.D. Ill. 1988); see, e.g., United States v. Burke, 700 F2d 70, 82 (2d Cir. 1983) (“When a person is brought before the grand jury and charged with a criminal offense, that individual is constitutionally entitled to have his case considered by an impartial and unbiased grand jury.”); United States v. Serubo, 604 F2d 807, 816 (3d Cir. 1979); United States v. Waldbaum, Inc., 593 FSupp. 967, 970 (II) (E.D.N.Y. 1984); United States v. Gold, 470 *248 FSupp. 1336, 1345 (N.D. Ill. 1979); State v. Murphy, 538 A2d 1235 (II) (N.J. 1988); see also State v. Barnhart, 563 SE2d 820 (II) (W. Va. 2002); State v. Emery, 642 P2d 838, 851 (Ariz. 1982). Accordingly, “it is settled that the Fifth Amendment requires that an indictment be returned by a legally constituted and unbiased grand jury.” Waldbaum, Inc., 593 FSupp. at 970 (collecting cases).
The purpose of the grand jury is to “provide a fair method for instituting criminal proceedings against persons believed to have committed crimes” with a “pledge [ ] to indict no one because of prejudice and to free no one because of special favor.” Costello, 350 U. S. at 362. The United States Supreme Court has recognized that grand jurors play a dual role as “a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and ... a protector of citizens against arbitrary and oppressive governmental action.” United States v. Calandra, 414 U. S. 338, 343 (II) (94 SCt 613, 38 LE2d 561) (1974); Branzburg v. Hayes, 408 U. S. 665, 686-687 (II) (92 SCt 2646, 33 LE2d 626) (1972) (the role of the grand jury is to determine “if there is probable cause to believe that a crime has been committed and [to] protectf ] citizens against unfounded criminal prosecutions”).
We have recognized that the grand jury
historically has been thought of as the primary security to the innocent against “hasty, malicious and oppressive prosecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will. [Cit.]” Wood v. Georgia, 370 U. S. 375, 390 (82 SC 1364, 8 LE2d 569) (1962).
Cochran v. State, 256 Ga. 113, 117 (344 SE2d 402) (1986) (Smith, J., concurring). Consistent with this responsibility to protect citizens against unfounded criminal prosecutions, we require grand jurors in Georgia to take an oath swearing to not present anyone “from envy, hatred, or malice.” OCGA § 15-12-67 (b).
Furthermore, grand jurors are prohibited from serving when they are “related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law.” OCGA § 15-12-70. We have also acknowledged that a person is disqualified from serving on a grand jury if that individual has a direct pecuniary interest in the prosecution. Isaacs *249 v. State, 259 Ga. 717 (2) (386 SE2d 316) (1989). Additionally, we have noted, albeit in dicta, that grand jurors should be impartial.
[A]n injustice is done to the individual citizen when he is subjected to accusation of crime by those who would be more than normally willing to exalt bare unsupported suspicion into a reasonable ground for indictment and trial. For this reason it is proper that the court should in advance of the grand jury’s action receive information from the defendant, from an amicus curiae, or from any other legitimate source, tending to show that certain of the grand jurors would likely be biased, and that he should purge the panel, so as to make it impartial.
Bitting v. State, 165 Ga. 55, 63 (2) (139 SE 877) (1927); see also Williams v. State, 69 Ga. 11 (5) (1882) (recognizing that it may be appropriate in a particular case to challenge grand juror bias), overruled in part on other grounds by Burns v. State, 89 Ga. 527 (6) (15 SE 748) (1892).
The majority quotes United States v. Knowles, 147 FSupp. 19, 21 (D.D.C. 1957), as quoted by the Court of Appeals in Creamer v. State, 150 Ga. App. 458, 460-461 (258 SE2d212) (1979), for the position that grand jurors need not be impartial or unbiased. I “suspect that this principle is rooted more in history than injustice.” Murphy, 538 A2d at 1239 (rejecting the argument that a grand juror’s prior opinion about the guilt of the accused does not serve to disqualify him). Furthermore, the majority’s position and reliance on Knowles is in line with the view that grand jurors function as “purely an accusatory body.” Niki Kuckes, “The Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury,” 94 Geo. L.J. 1265, 1297 (2006). However, I agree with the competing view, as expressed by other courts cited above, that bias rules are applicable to grand jurors based on the grand jury’s role to protect citizens. See id. (discussing competing views and noting that a “recurrent grand jury battle has centered on whether a prosecutorial or judicial notion of ‘bias’ should be applied to grand jurors”); see also Packer v. Superior Court, 201 Cal.App.4th 152, 168 (2011) (noting that there is “hardly a national consensus” on the issue of whether due process demands that grand jurors should be free from bias).
Therefore, in order to effectively protect against prosecuting citizens based on an intimidating power, malice, personal ill will, envy, or hatred, I agree with the line of cases cited above that grand *250 jurors must be impartial and unbiased. Accordingly, I would overrule any authority from this Court and the Court of Appeals to the extent it holds otherwise.
2. Challenges Propter Affectum for Grand Jury Bias Are Permissible
The majority cites a string of cases for the position that a claim for grand juror disqualification propter affectum, for favor or bias, provides no ground for a plea in abatement. This rule can be traced to Betts v. State, 66 Ga. 508, 509 (1881); see also Hall v. State, 7 Ga. App. 115 (1) (66 SE 390) (1909) (commenting that the earliest adjudication of this issue is found in Betts). In Betts, the defendant filed a plea in abatement at his arraignment arguing that he ought not to be compelled to plead to the indictment because the foreman of the grand jury was biased. 66 Ga. at 511. The foreman’s bias was due to the fact that he was a member of the coroner’s jury, which sat to inquire into the cause of death of the deceased, and this coroner’s jury had determined that the defendant had killed the deceased. Id. The trial court overruled the defendant’s plea, and we affirmed. Id. at 514. The Court explained that a challenge propter affectum would not abate the plea where a grand juror had already formed an opinion about the accused because a grand juror must be allowed to have an informed opinion and because a plea in abatement would cause embarrassment and delay. Id. at 515.
Thus, Betts demonstrates that a plea in abatement based on disqualification propter affectum to challenge grand juror bias is not possible because grand jurors may in fact be biased; there is no right to an unbiased grand jury and therefore no proper means for challenging such. See Garnett v. State, 10 Ga. App. 109 (1) (72 SE 951) (1911) (explaining that the grand jury is merely a court of inquiry and the disqualification of a grand juror cannot be achieved by plea in abatement). However, under my view that our citizens have the right to an unbiased and impartial grand jury, a propter affectum challenge would be a proper means of contesting grand juror bias. Otherwise, the right rings hollow.[6]
*251 3. Challenging Grand Juror Bias
Pursuant to OCGA § 17-7-110, “[a] 11 pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court.” This statute, which post-dates all the cases cited by the majority for the position that propter affectum challenges cannot be raised post-indictment, makes no distinction based on the type of motion, or whether the challenge is propter defectum or affectum. See State v. Dempsey, 290 Ga. 763, 765 (1) (727 SE2d 670) (2012) (holding that any prior requirement that a propter defectum challenge be made pre-indictment is no longer valid under OCGA § 17-7-110). Thus, a pretrial motion challenging grand jury bias is proper.
Furthermore, to the extent that pre-indictment motions do not qualify as “pretrial motions” under OCGA § 17-7-110, they wouldstill be proper because they were filed before the indictment was issued. We have recognized that if any propter affectum challenge exists at all, it must be made before the indictment is issued. Bitting, 165 Ga. at 63, 64 (holding that a challenge propter affectum was not a “good ground for a plea to abate the accusation,” but noting that it is proper for the court to hear challenges to grand jurors based on bias and partiality “in advance of the grand jury’s action”); Lascelles v. State, 90 Ga. 347 (3) (16 SE 945) (1892) (plea in abatement properly overruled where the accused had an opportunity to challenge the grand jury but failed to do so, and thus implicitly recognizing that a propter affectum challenge may be made pre-indictment); Williams, 69 Ga. at 28 (propter affectum challenge to the plea “came too late” but recognizing that “[i]f, however, it be deemed important in a particular case to fight the prosecution in limine, diligence requires that the challenge be made before the bill is found”); Smith v. State, 62 Ga. App. 498, 500 (1) (8 SE2d 797) (1940) (citing Williams and Lascelles with approval and finding no evidence to support plea in abatement or any allegation that the defendant had no opportunity to challenge the grand jurors before the indictment was found); Stapleton v. State, 19 Ga. App. 36 (1) (90 SE 1029) (1916) (holding that challenge was “propter affectum, and should have been urged before the indictment was found”).[7]
*252 4. Brown Timely Challenged Grand Juror Bias
Brown filed three motions to challenge the grand jury poll before the indictment was issued against him on July 7, 2011, seeking to disqualify grand jurors who were also members of Cobb EMC from serving on the grand jury. The court never ruled on any of these motions. After the grand jury handed down the indictment, Brown filed a motion for abatement and/or dismiss for improper use of disqualified grand jurors, reasserting his arguments from his previous motions to challenge and listing by name the grand jurors to be disqualified because they were EMC members. Pursuant to OCGA § 17-7-110, his pre-indictment challenges to disqualify and his motion for abatement were timely. See Dempsey, 290 Ga. at 765.
5. Grand Jurors Should Be Deemed Biased and Partial in This Case
The grand jury that issued the July 7, 2011, indictment against Brown should be deemed biased and partial. The indictment asserted on its face that Brown allegedly stole millions of dollars from Cobb EMC members and that Brown gave false statements to conceal these thefts from Cobb EMC members. The indictment claimed that Cobb EMC members suffered financial loss because of Brown’s alleged theft and racketeering.[8] Four persons who served on the grand jury, including the foreperson, who indicted Brown on July 7, were members of the Cobb EMC. As the victims of the alleged theft and racketeering committed by Brown, Cobh EMC members had a direct financial stake in the prosecution of Brown.
Additionally, the trial court denied Brown’s motion to challenge the grand jury poll in part because Brown challenged only four grand jurors, not all of the grand jurors. The trial court explained that 16 *253 grand jurors comprised an entire grand jury and 12 grand jurors are required to return a true bill of indictment. The trial court found that because the vote was unanimous, “even if the votes of the grand jurors in question [were] not counted, the sixteen grand jurors who voted in favor of returning a true bill of indictment [were] sufficient as a matter of law.”
Decided June 2, 2014.
The Barnes Law Group, Roy E. Barnes, John F. Salter, Jr., James C. Tribble, Gillen, Withers & Lake, Craig A. Gillen, Thomas A. Withers, Anthony C. Talbott Lake, for appellant.
Yet, we cannot know how the four grand jurors, particularly the Cobb EMC grand juror who served as the foreperson, may have influenced the other grand jurors. Due to the broad discretionary power of the grand jury to frame the indictment and the nature of the criminal proceedings to come, the potential for infecting the other grand jurors is self-evident and too high a risk to dismiss merely by finding there were other sufficient votes. See Dempsey, 290 Ga. at 764 (where one grand juror is incompetent to serve, the indictment is void no matter how many grand jurors have found the bill to be true); State v. Schenkolewski, 693 A2d 1173, 1191 (IV) (N.J. Super. Ct. App. Div. 1997) (affirming trial court’s dismissal of the indictment because two grand jurors were potentially biased and finding that “it did not matter that one juror had been excused and the other one disqualified from voting, because the potential for tainting the other jurors was self-evident”). Thus, as victims of the alleged crimes, the four grand jury members that participated in the issuance of the July 7, 2011, indictment should be deemed biased or prejudiced against Brown, and the entire grand jury was infected.
From the majority’s ruling, “an injustice [has been] done to [Brown] when he [was] subjected to accusation of crime by those who would be more than normally willing to exalt bare unsupported suspicion into a reasonable ground for indictment and trial” due to the fact that the grand jurors were victims, or influenced by victims, of the crimes for which Brown was indicted. See Bitting, 165 Ga. at 63. The majority’s opinion tightly closes the door against any challenge to grand jury bias, even where victims of the crimes of the accused serve on the grand jury and even where the accused files a preindictment challenge. This creates the exact injustice that the Court warned against almost a century ago in Bitting. For all of these reasons, I respectfully dissent.
I am authorized to state that Justice Benham joins in this dissent.
*254 D. Victor Reynolds, District Attorney, John S. Melvin, Assistant District Attorney, Bondurant, Mixson & Elmore, John E. Floyd, John C. Butters, for appellee.

 The majority states that “[gjrand jurors should be... encouraged to govern themselves,” including in cases where a grand juror is prohibited from serving under OCGA § 15-12-70. Id. (grand jurors disqualified from acting or serving when such jurors are related by consanguinity or affinity to any party interested in the result of the case within the sixth degree). This is hardly a sufficient or practical remedy for the accused, and as demonstrated by this case, self-governance is not reliable. Therefore, I would find that propter affectum challenges, rather than self-governance, are a more appropriate method for the accused to challenge grand jury bias.

 Notably, in all of but one of the cases cited by the majority for the position that a challenge propter affectum provides no ground for plea in abatement, the challenge was filed post indictment. See Black v. State, 264 Ga. 550 (2) (448 SE2d 357) (1994) (where the defendant filed a motion for new trial alleging a defective indictment, disqualification of a grand juror pursuant to OCGA § 15-12-70 was not viable); Fisher v. State, 93 Ga. 309 (1) (20 SE 329) (1893) (no challenge propter affectum where the defendant “had warning to challenge the juror before the bill was found” but failed to do so); Lascelles, 90 Ga. at 372-375 (discussed supra); Simpson v. *252 State, 100 Ga. App. 726 (1) (112 SE2d 314) (1959) (affirming dismissal of plea in abatement because the defendant failed to make a timely challenge and filed his plea in abatement “some time after the indictment had been returned”); Garnett, 10 Ga. App. at 111 (affirming dismissal of plea in abatement where it was filed before “pleading to the merits”); see also Sallie v. State, 276 Ga. 506 (14) (578 SE2d 444) (2003) (finding any error by the grand jury to be harmless because a trial jury had found the defendant guilty beyond a reasonable doubt).
The only case cited by the majority where the defendant filed a pre-indictment motion challenging grand juror bias is In re Hensley, 184 Ga. App. 625 (362 SE2d 432) (1987). In that case, the court denied the defendant’s motion, relying on Knowles, which, as I have already shown in Division 1, reflects the position that grand juries need not be unbiased. In re Hensley, 184 Ga. App. at 627. Accordingly, I believe In re Hensley should be overruled. Even if In re Hensley were not overruled, it is distinguishable because the grand jurors in question were not victims of the crimes for which the defendant was indicted, unlike the facts in this case. 184 Ga. App. at 626-627.

 According to the indictment, Cobb EMC is owned by its members; it does not issue stock. Under the Cobb EMC bylaws, all revenue in excess of operating costs and expenses is called “patronage capital,” and this capital is the property of members. The indictment alleges that Brown stole millions of dollars in patronage capital.